Howard GRAFMAN, personally and as a shareholder derivative action on behalf of Century Broadcasting Corporation, Plaintiff,

v.

CENTURY BROADCASTING CORPO-RATION, a Delaware corporation; George A. Collias; Anthony C. Karlos; James S. Soter; and Richard J. Bonick, Jr., Defendants.

No. 89 C 5372.

United States District Court,
N.D. Illinois, E.D.

July 3, 1990.

Louis R. Hegeman, Robert A. Carson, Gould & Ratner, Chicago, Ill., for plaintiff.

William T. Cahill, Thomas P. Cimino, Scott B. Greene, Phelan, Pope & John, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Century Broadcasting Corporation, George A. Collias, Anthony C. Karlos, James S. Soter, and Richard J. Bonick, Jr., have moved to dismiss the Second Amended Complaint of Howard Grafman, pursuant to Rules 12(b)(1), 12(b)(6), and 23.1, Fed.R.Civ.Pro. Alternatively, they have moved to stay these proceedings pending the report of a Special Litigation Committee of Century on the matters raised in four counts of Grafman's complaint which are derivative claims.

This court first discussed this action in *Grafman v. Century Broadcasting Corp.*, 727 F.Supp. 432 (N.D.Ill.1989). That opinion gives the general flavor of this dispute, notwithstanding Grafman's twice amending his complaint, and the court assumes familiarity with that opinion for purposes of this one.[1] Since his first complaint, Grafman has doubled his counts from four to eight. Counts 1, 3, 5, and 7 of the Second Amended Complaint are on behalf of Grafman himself. In Count 1, Grafman

contends that the defendants violated 18 U.S.C. §§ 1962(c)-(d) (1988), which are part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In Count 3, Grafman alleges violations of 18 U.S.C. §§ 1962(b) and 1962(d). In Count 5, he alleges violations of 18 U.S.C. §§ 1962(a) and 1962(d). Count 7 is a state law claim for breach of fiduciary obligation. For each of these counts, in Counts 2, 4, 6 and 8, respectively, Grafman brings a mirror-image claim on behalf of Century.

### Derivative Claims

The defendants' principal objection to Grafman's derivative claims is that Grafman has failed to comply with Rule 23.1. That rule requires a plaintiff who brings a derivative action as a shareholder of a corporation to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Grafman acknowledges that this rule applies to his derivative claims. That is why he alleged this in each of them:

> Grafman has, since August 31, 1987 and continuing to the present time, urged the directors of Century ... not to take the actions of which he has been aware, which are complained of herein.... Notwithstanding these requests and demands, Century has taken no action to correct or remedy the wrongful acts. Because Collias and Karlos, who are continuing to benefit from the fraud alleged herein, own a controlling majority of the shares of Century, further efforts to obtain the desired action from Century would be futile.

See Second Amended Complaint ¶¶ 87, 96, 106, 118.

This allegation meets the demand requirements of Rule 23.1. The defendants have acknowledged this. See Memorandum in Support of Defendants' Motion to Dismiss Amended Complaint 8. What the defendants wish is that the court impose

---

1. Grafman has not named Joseph M. Baisch as a defendant in the Second Amended Complaint, despite having named Baisch in his prior complaints.

one further requirement, one not found explicitly in the text of Rule 23.1: they want the court to hold Grafman's suit in abeyance—either by dismissal of his claims without prejudice or by staying proceedings—while Century takes a harder look at whether it wishes to pursue this matter on its own.

■ The defendants' position has some merit. Historically, courts deciding whether a plaintiff's demand is adequate under Rule 23.1 have looked only to the allegations of the complaint, much as this court did above. See generally Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7C Federal Practice and Procedure § 1836 (West 1986). The federal courts are beginning to recognize, however, that the procedural requirements of Rule 23.1 overlap with the substantive requirements of the laws of incorporating states. When procedural requirements clash with or attempt to alter substantive rights, the procedures must yield. See the excellent discussion of this topic in *Allison on behalf of G.M.C. v. General Motors Corp.*, 604 F.Supp. 1106, 1115–16 (D.Del.1985), aff'd, 782 F.2d 1026 (3rd Cir.1985).

The parties acknowledge this point. They agree with the *Allison* court that the law of the state of incorporation—in this case, the law of Delaware—controls whether a shareholder has made an adequate demand upon the corporation, and whether that demand is futile. The parties disagree over what Delaware law requires in this case. Part of this disagreement stems from facts. For example, the defendants allege that Century has created a Special Litigation Committee to look into whether Grafman's claims have merit. This fact does not appear in Grafman's Second Amended Complaint, which is the only source of facts on which the court may rely for purposes of a motion to dismiss. Graf-

man for his part attacks the Committee as being inadequate; for this he too relies on facts outside of his complaint.

■ While the procedures of Rule 23.1 must yield to the substantive requirements of Delaware law, the parties have given the court no reason for dispensing with the rest of the Federal Rules of Civil Procedure in deciding the defendants' present motion. The court will not do so. See *Allison*, 604 F.Supp. at 1119 (declining to deviate from the procedures of Rule 12(b) in deciding motion to dismiss). Since Grafman adequately alleges a demand in his complaint, it is not proper for the court to dismiss Grafman's derivative claims at the present time. If the defendants believe that the undisputed facts entitle them to dismissal pending the findings of Century's Special Litigation Committee, they may make the appropriate motion.

■ The defendants argue that notwithstanding whether Grafman may maintain his derivative suit, they are entitled to a stay of discovery pending the Committee's report. The defendants are correct that under Delaware law, the corporation itself has the initial, preemptive opportunity to investigate derivative claims, and to determine whether the corporation should pursue them. See *Aronson v. Lewis*, 473 A.2d 805, 811–813 (Del.1984); *Kaplan v. Peat, Marwick, Mitchell & Co.* 540 A.2d 726, 730 (Del.1988). The directors of a Delaware corporation may make this determination by appointing a committee. The directors may delegate to this committee the power both to investigate and to terminate derivative litigation. See *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784–89 (Del.1981).[2] A dissatisfied shareholder may attack the committee's conclusion only after the corporation adopts it. See *id.* at 788–89.

**2.** Grafman argues that a Delaware corporation may not refer this decision to a special committee when that corporation is a close corporation. Assuming for the moment that Century is such a corporation under Delaware law, there is no support for Grafman's proposition under Delaware law. Indeed, 8 Del.C. § 356 (1983), one of the provisions of Delaware's close corpora-

tions law, states that Delaware's close corporations statutes "shall not be deemed to repeal any statute or rule of law which is or would be applicable to any corporation which is organized under the provisions of this chapter [that is, Delaware corporations law] but is not a close corporation."

Nevertheless, the corporation's power to investigate derivative claims does not translate into an absolute right to halt all related proceedings. It is the duty of the courts to insure that the corporation's investigation is not a mere artifice for delay. See *Mills v. Esmark, Inc.*, 91 F.R.D. 70, 73 (N.D.Ill.1981) (neither a shareholder's demand on the corporation, nor its response, "should be an exercise in idle ceremony"). In order to discharge its duty, the court must ascertain among other things (1) when Century's committee began its investigation, (2) how long this investigation should take, (3) what discovery Grafman would like to have in the interim, (4) whether such discovery would interfere with the committee's investigation. The parties do not discuss these matters in their briefs, and so the court will postpone its decision on the defendants' motion for a stay until their next appearance.

*Individual Claims*

The defendants begin their attack on Grafman's derivative claims by arguing that he has failed to allege a "pattern" of racketeering activity, as he must do in all of his RICO counts. See 18 U.S.C. §§ 1962(a)-(d). The defendants assume for purposes of this argument that the court must ignore allegations relating to Grafman's derivative claims, as it is questionable whether Grafman may maintain those claims. Having narrowed the facts in this manner, the defendants argue that their actions as alleged affected only one victim, Grafman, to achieve one purpose, reducing his say in Century's affairs. These facts would not amount to a "pattern" under RICO. See *Brandt v. Schal Associates, Inc.*, 854 F.2d 948, 952-53 (7th Cir.1988) (multiple acts in furtherance of single episode of fraud against one victim do not constitute RICO "pattern").

The defendants confuse Grafman's ability to maintain a derivative claim with his right to allege facts. Even if the Committee were to decide that Grafman's derivative claims were meritless, and this court were to accept the Committee's conclusion as valid, that determination would not bind this court as res judicata nor collaterally estop Grafman from contesting the facts which the Committee considers in its report. The Committee's conclusion will limit only the power of Century's shareholders to bring claims on behalf of the corporation. The court thus returns to its first holding in *Grafman*, 727 F.Supp. at 433 (citation omitted): for purposes of a motion to dismiss, "this court must accept the allegations of fact contained in Grafman's complaint as true, and view them, along with reasonable inferences which the court can draw from them, in the light most favorable to Grafman."

In light of this standard, there can be no question that Grafman has alleged that he was harmed by a pattern of racketeering activity. In determining whether a plaintiff has pleaded a RICO pattern, the court must consider the number and variety of predicate acts, the length of time over which the predicate acts were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. See *Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir.1988). The defendants allegedly engaged in a variety of predicate acts of mail fraud over two years. They allegedly harmed not only Grafman, but Century's stockholders as well. They had multiple aims, including but not limited to diminishing Grafman's say in Century's affairs. They accomplished these aims through a variety of schemes. See *Grafman*, 727 F.Supp. at 433–34. All told, this court determines that Grafman has demonstrated "continuity plus relationship" among the defendants' alleged acts, amounting to a "pattern" of racketeering activity.

The defendants next direct an argument to Counts 1 and 3. They contend that Grafman has failed to state claims in these counts as Grafman has not shown that he was injured by reason of a violation of § 1962(c) (which prohibits conducting the affairs of an enterprise through a pattern of racketeering activity) or § 1962(b) (which prohibits the acquisition of or maintenance of an interest in an enterprise engaged in interstate commerce through a

pattern of racketeering activity). See 18 U.S.C. § 1964(c) (permitting civil action only by persons injured "by reason of a violation of section 1962").

The defendants raised an argument related to this one in their earlier motion to dismiss. At that time, the court noted that Grafman had standing to allege injury only on account of the defendants' efforts to dilute his voting power in their 1986 reorganization of Century and deprive him of his rights through by-law changes made in 1987. See *Grafman*, 727 F.Supp. at 435. By amending his complaint, Grafman has introduced two new allegations: first, that he loaned Century $56,391.68 in August 1987, and has not been repaid on account of the defendants' misdeeds; second, that the defendants breached an agreement which provided equal compensation to Grafman and defendants Collias and Karlos for 1988. See Second Amended Complaint ¶¶ 42–50, 52–55. The injuries which Grafman allegedly suffered from these actions are separate and distinct from those which allegedly befell Century's shareholders, and Grafman may maintain a claim for them regardless of his capacity as a shareholder of Century. See *Grafman*, 727 F.Supp. at 435.[3]

■ The defendants contend that notwithstanding Grafman's standing to bring these claims, Grafman has not shown that he suffered these injuries by reason of violations of §§ 1962(b)-(c). Section 1964(c)'s "by reason of" language requires a plaintiff who brings a civil RICO action to show how a RICO violation caused his injury. See *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 686 (7th Cir.1990). Since the RICO prohibitions stated in § 1962 center on actions conducted through a pattern of racketeering activity,

§ 1964(c)'s "by reason of" requirement effectively forces the civil RICO plaintiff to demonstrate that the predicate act alleged for purposes of making out a violation of § 1962 resulted in direct harm to him or her. See *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809 (7th Cir.1987).

■ The predicate acts alleged in Grafman's complaint are fifteen mailings of materials by the defendants in furtherance of their alleged scheme to defraud Grafman and Century's shareholders, which would be illegal under 18 U.S.C. § 1341. Unfortunately, Grafman has not alleged sufficient facts from which this court can infer that the mailings caused the injuries for which Grafman has standing. Specifically:

1. *1986 Reorganization of Century—* Grafman alleges that on or about December 9, 1986, defendant Karlos mailed something from Century's offices to its shareholders which led to Century's reorganization. See Second Amended Complaint at ¶ 76(a). The court specifically noted in *Grafman*, 727 F.Supp. at 435–36, that this allegation was not sufficiently particular under Rule 9(b). The court will not allow Grafman to make this error a third time. The court will dismiss Grafman's claims in Counts 1 and 3 which stem from the 1986 Reorganization of Century with prejudice, for failure to comply with Rule 9(b).

2. *August 1987 By-Law Changes*—As he asserted in his prior complaints, Grafman contends that the defendants pushed through by-law changes in August 1987 which eventually led to Grafman's removal as president of Century and diluted his voting power. See *Grafman*, 727 F.Supp. at 433–34. Grafman alleges only two mailings during the period leading up to these events: the December 1986 mailing, which

---

**3.** Grafman contends that he has raised four other injuries for which he has standing to bring claims. Three of these injuries—an alleged denial of participation as a director in Century's affairs, the denial of certain benefits stemming from his unlawful removal as president of Century, and the denial of his proportionate voice in corporate affairs as a shareholder of Century—relate to the 1986 and 1987 reorganization efforts of the defendants; the court previously held that Grafman has standing to bring these

claims. See *Grafman*, 727 F.Supp. at 435. The fourth injury, his dilution of his interest in radio station KMEL, also may be related to these reorganization efforts, but if Grafman is alleging merely that the value of his interest in Century declined on account of the defendants' defrauding Century of the KMEL property, this injury is derivative, and Grafman may not bring a claim to recover for it on his own. See *id.* at 434.

Grafman has recounted with insufficient detail, and a mailing in late August 1987 from defendant Bonick to American National Bank, which maintained a line of credit for Century. See Second Amended Complaint at ¶¶ 76(a)-(b). The court cannot reasonably infer how the maintenance of a line of credit could result, either directly or ultimately, in a change in a corporation's by-laws or the ouster of its president.

3. *August 1987 Loan to Century* —Grafman claims that the defendants deprived him of his loan to Century on account of (a) his inability to verify Century's cash position, (b) Collias's misrepresentations, and (c) Century's loans to Collias. See *id.* at ¶¶ 43–50. The court cannot infer a link between any of the mailings alleged in *id.* at ¶ 76 and the alleged causes of Grafman's loss of his loan. The court cannot infer that the defendants used the mails to prevent Grafman from verifying Century's cash position, communicate Collias's misrepresentations, or facilitate Century's loans to Collias.

4. *Breach of Compensation Agreement* —Grafman contends that the defendants breached an agreement to provide equal compensation among himself, Collias, and Karlos for 1988. See *id.* at ¶¶ 54–55. Grafman alleges only one mailing which is even remotely related to compensation in *id.* at ¶ 76(d), where he contends that in or about December of 1989, Karlos mailed Joseph Baisch and defendant Soter "bonus" checks. The court cannot infer that these mailings, coming significantly after the period covered by the compensation agreement, furthered its breach.

On account of Grafman's failure to comply with Rule 9(b) and to demonstrate that he suffered harms, for which he has standing, by reason of violations of §§ 1962(c) and 1962(b), Grafman has not stated claims in Counts 1 and 3 under 18 U.S.C. § 1964.[4] They are dismissed.

■■■ The defendants next attack Count 5, which Grafman brings pursuant to §§ 1962(a) and (d). Section 1962(a) states

in part: "It shall be unlawful for any person who has received any income derived ... from a pattern of racketeering activity ... to use or invest ... any part of such income, or the proceeds of such income, in acquisition of any interest in ... any enterprise which is engaged in, or the activities of which affect, interstate ... commerce." Grafman alleges that Collias and Karlos have received income through a pattern of racketeering activity and have invested that income in the San Francisco Century Limited Partnership. See *Grafman*, 727 F.Supp. at 434 (describing transaction). Grafman never explains, however, how Collias and Karlos's investment resulted in harms to him for which he has standing. As the court explained in *id.* at 434–35, the defendants' appropriation of Century's assets and their placing those assets in the San Francisco Century Limited Partnership affected all of Century's shareholders, not only Grafman. Grafman may not maintain this claim on his own. The court will dismiss it under Rule 12(b)(6).

Since the court has disposed of Grafman's individual claims in Counts 1, 3, and 5, the court will dismiss of his individual state law claim as well, for the same reasons given in *Grafman*, 727 F.Supp. at 436.

### Conclusion

The court dismisses Counts 1 and 3 of Grafman's Second Amended Complaint under Rule 12(b)(6) and for failure to comply with Rule 9(b). The court dismisses Count 5 under Rule 12(b)(6) and dismisses Count 7 under Rule 12(h)(3). The court denies the defendants' motions to dismiss Grafman's remaining claims. The court will take the defendants' motion for a stay of proceedings under advisement, pending argument at the next status hearing in this matter.

---

**4.** The court noted in *Grafman*, 727 F.Supp. at 436 n. 1, that a plaintiff's failure to allege a violation of §§ 1962(a)-(c) makes it impossible for him or her to claim a violation of § 1962(d), something which Grafman does in all of his RICO claims.